Thank you, Your Honor. May it please the Court, Elliot Kahn for Appellant and Cross Appellee Narciso Fuentes, and my co-counsel, Arthur Levy, is in the courtroom as well. In light of the cross appeal, I'd like to reserve eight minutes for rebuttal. To address the state law issue first, from the onset of the case, Dish Network has asked the Court to treat the transaction as if an oral contract was formed on August 5, 2015, during the phone call, and to apply the Traveler's Rule to determine the place of contracting. This has been over our objection, or our overall position. It seemed very clear from the onset that no binding contract was formed until the Dish technician spent two to three hours at Mr. Fuentes' home and really wouldn't leave until he signed the contract in a language that he didn't understand. But the Court gave Dish what they wanted, and the Court's summary judgment order rules on alternative grounds. It first accepts Dish's argument that an oral contract was made, and as Dish requested, they applied the Traveler's Rule. And just as any first-year law student would find, the Court found that after Dish's sales agent rattled off terms and conditions and said, Mr. Fuentes, do you accept? And he uttered the words of acceptance, yes. Mr. Fuentes was the offeree, and per the Traveler's Rule, the contract was formed at his home, away from Dish's appropriate trade premises, and the Home Association Sales Act applies. Now, the Court also ruled on the alternative grounds that, of course, when a contract was signed at Mr. Fuentes' home, it was away from appropriate trade premises, and the Home Association Sales Act applies. So for that reason, the Court's summary judgment order should be affirmed. Now that the — on to the second issue, which is what are Article III courts to do once they cease to have Article III jurisdiction. It's important to keep in mind that our Founding Fathers have made our Federal courts courts of limited jurisdiction. It's clear that not all claims can be heard in Federal court. And so to affect the intent of the Constitution, Congress enacted 28 U.S.C. 1447, including Subdivision C, which makes clear that once subject-matter jurisdiction no longer exists, the case is to be remanded. This has been implemented through — But you're not — you're actually not asking for the case to be remanded, because you're asking for judgment on part of the case, right? You're asking for part of the case to be remanded, which is to say, essentially, a claim or maybe a remedy. I know that's disputed. Well, what we're asking is what remains of the case to be remanded. So by entering summary judgment, we only request a partial summary judgment on one of our claims. The Court has adjudicated the individual aspect of the case. Right. But how is this consistent with the statute which talks about the case being remanded? Usually when you think about the case, it means the whole case, not a part of the case. So first, the Lee case does cite the dicta from the U.S. court case in Shaq for the proposition that portions of the case can be remanded. And so I think a partial remand is possible. But that's not what we have here. It's — what we have is — it is the entire case. It's what remains of it. So what would have happened if, at the beginning of this case, the district court had said, I'm just seeing right out of the gates here that there's no standing for this public injunctive — let's call it — claim? Yes. Could the district judge have then said, I'm now going to take that claim and send it back? Or does the district judge actually need to wait until the end and say, well, now every other claim is done, all that's left is this one claim, now I'm sending it back. Do you see where I'm going with this? I understand. And as an initial matter, it's — standing jurisprudence has been quite a wild ride since this case was filed. We filed a few months before the Spokio decision came down. And so what's — what standing has met really has changed. I think there are two options the court could have done. One would have been to just hold the public injunctive relief claim in abeyance until resolution of everything that it has subject matter jurisdiction over. And I think there are court resources and policy reasons for that. And while the issue is not before the court, I think applying the dicta from Lee, the public injunctive relief claim could have been remanded. I guess I have a number of concerns with the — Could I get him to clarify? So —  So you said two things could happen. I think — what was your — the second part was your — The second one is applying the dicta from Lee — It gets remanded at the beginning of the case. It could have been remanded. I think what was done here is probably better policy. We were — it can serve judicial resources. What we're allowing when the court — I'm not sure I understood his answer. Okay. With what — how it played out and how standing jurisprudence has changed and evolved, it did work out as such that it allowed one court to resolve what it could without reaching And now, at the end, certainly once the court adjudicated the individual liability and certainly once the party stipulated the damages, while there was a portion of the claims that was still live or could be live in state court, there was nothing left that the district court had the power to adjudicate and remand what's appropriate. What case do you think — or what cases would support doing this? Well, this is kind of exactly what happened in the Magadia v. Wal-Mart case. In Magadia, the plaintiffs had filed a class action in California state court alleging three violations of California's Private Injuring General Act of 2004. The court — the trial court found Article III standing for two of the three claims but ruled against the plaintiff and found Article III standing for the third claim, yet — found, sorry, no Article III standing for the third claim and still ruled against the plaintiff. Now, while the analysis was, obviously, quite brief on appeal, what openly happened was — Well, there essentially was no analysis. I mean, it seems that it happened, so you found an instance where it happened, but I struggle to see how that can be — maybe it's informative to some extent that this is not totally unprecedented, but I don't see how it's binding. They do cite Lee for that proposition. And so our position would be that by adopting Lee's dicta analysis, that that became a holding of the Ninth Circuit. So you want us to send back the remedy to State court, but what if the State court judge says, you know, this California statute is not meant to apply to this fact pattern based on legislative counsel's submittal at the time, so I disagree with what the federal court did and, therefore, we're not going to do any public injunction. Would that be considered unfair? I don't think so. I mean, as an initial matter, the — you know, we've now lost on the California Translation Act claim. That's — that's — that's done. The trial court has found, at least with Narciso Fuentes' individual circumstance, that the HHS — Home Solicitation Sales Act applied. That's obviously on appeal. I think once the Ninth Circuit were to affirm that, then that would become the law of the case. And if the trial court were to find that public injunction relief wasn't appropriate for some reason or other, that's — that's for the California trial court to do. But it's certainly not a preordained or conclusion at this point. And it's a matter of State law for the State court to determine. Ultimately, remand puts the parties back in the position that they would have — would have been. We'd filed this case in State court. Had we filed the case in federal court, things might — might be different. But it's DISH that bears — who removed — that bears responsibility of the removal. And we should — and taking into account 1447C, the only appropriate — what's required is to remand what remains of the case. I saw that argument in the briefs. I was confused by it. I mean, it seems that you could have pled the case in a way that tried to avoid CAFA removal, but you pled it in a way that subjected it to CAFA removal, which — and then you filed it in State court, which — and we know what will happen next. It was removed. So I don't really see how the plaintiff is sort of in a bad position. They could have done something differently than they did. Well, I — I mean, it seems like what we're blaming here is Congress deciding that a case like this could be removed. The purpose of CAFA is not to foreclose viable State law claims. Well, but the purpose of it is to bring it into Federal court, where we have standards like Article III standing that may be different than other — what another State court might have. Right. And what remains of the case — and I understand that there is case law saying, you know, even after we lose class certification, if we remove our CAFA, we stay there. What remains of the case is no longer a CAFA claim. It's purely one for public injunctive relief. We've lost on class certification. We appreciate that. We can't get private injunctive relief. We can't get, you know, equitable reconstitution to a group of people. All that we're seeking going forward is for DISH to change its business practices, which is a remedy that California has deemed appropriate under the unfair competition law. Right. I mean, I suppose Congress could have devised a system like this where some claims go back. And, in fact, they did in the context of supplemental jurisdiction have a similar scheme to what you're asking for, where some claims essentially get broken off and sent back down. But here we're looking at a statute that's actually worded very differently. It doesn't talk about claims. It talks about the case. So the Polo case makes clear that 1447C does apply to CAFA. And so there certainly are already circumstances where something could be removed under CAFA and Article III jurisdiction could be lost. And the case at that point, say the entirety of the case, could be remanded. And so that is where we are now is there are claims that are still viable in state court or certainly were, you know, right before the court entered judgment, that there was no Article III jurisdiction. The Rogers v. Lyft case, I believe, cites a Supreme Court case, I think, in the city of Los Angeles v. LA, for the proposition that state courts are free to devise remedies and procedures that don't necessarily comply with Article III. And here— That's true. I mean, I don't know what that tells us, though, about what to read into 1447C. But the alternative, of course, is using the federal systems to foreclose adjudication of state claims that would be viable in state court. And that would be a gross overreach of the federal system. Well, I mean, the—but that happens where a case goes up to federal court and federal courts have federal procedures, and the procedures in federal court may cause somebody to not prevail when they might have prevailed in state court under a different procedure. I understand, but we're unaware of any cases or any appellate cases where, under the basis of Article III standing, that viable cases or claims to be viable in state court are foreclosed just because they're in federal court. And certainly, had we not asked for this or had we originally filed the case in federal court, I think the dismissal could be appropriate. But where we started in state court— Well, I mean, it would be the only—that would be the only appropriate thing. Of course. But where we started in state court, and it's not preordained that a state court would get rid of the—remain claims, remand is appropriate to preserve, like, comity between the federal and state court systems. You want to try to save some time for rebuttal? I think so. You're welcome to continue, but it's up to you. And so, in conclusion, we request that the court direct the district court to remand the remainder of the case. Thank you. Thank you. Good morning. Richard Patch, Cobblins Patch, Duffey and Pass, for the Defendant Appellee and Cross Appellant, DISH Network, LLC. With the court's—subject to the court's views, I'd like to go first with the Home Solicitation Sales Act, because, oddly, ruling on that would obviate the remand question and then turn to the remand question. I would like to reserve two minutes. On behalf of DISH, we request that the court reverse the district court's decision made in response to the motion for summary judgment by Mr. Fuentes, finding that the California Home Solicitation Sales Act applies to an oral agreement entered into over the telephone, initiated—a call initiated by Mr. Fuentes to DISH at its usual and appropriate trade premises. Let's assume you're right about this being about the phone call and not about when the technician came to the house. Why would we describe Mr. Fuentes as the offeror in this situation? Because he called? Yes. Well, for actually two reasons. One, because he called. He initiated the call. And second, because to do otherwise would essentially to rewrite Restatement 26 that suggests any kind of public advertising makes the seller the offeror. And that's not the case. It's well recognized. That's not enough. That's not an offer that can be accepted. That may be right. But what about when on the phone—and this is not—you know, this is like a package that DISH network offers. And it seems that when you read the description of what happened on the phone call, it was really DISH saying, well, do you accept these terms? How do you get around that? Well, first, I believe that a bright-line test was intended by the legislature, as found by the Legislative Council, that when a person initiated the call to a business, they should be deemed the offeror. But the problem— Will it stop no matter what type of product we're talking about or service? I believe that as a proposition, when they initiate the call, they are the offeror. They're calling to say— So let me give you a quick—it seems to me that can't be right. Because, you know, I call and I say, hey, I want to buy your house for a dollar, right? And then they respond and say, no. We will sell you our house for a million dollars. And I say, offer accepted. And you're saying I'm the offeror. I mean, I was the offeror originally, but my offer was rejected. They made a counteroffer. So now I'm the offeree accepting their counteroffer. It seems, frankly, absurd to have a cross-the-board rule that just because you make the phone call, you are the offeror. Well, I believe you are the offeror. But what you suggest that didn't happen here, and what did happen— No, actually, it is what happened, kind of. I mean, he calls and he says, hey, I want this special deal. And shockingly, a business like Dish says, you know, we don't do one-on-one deals. We do contracts of adhesion, right? That's what all these groups do. If I call up Netflix—I don't know how to call up Netflix, but I say, hey, I'd like to have something where I get three-quarters of your videos, and I pay three-quarters of the price. And if I was able to talk to a person at Netflix, they'd be like, no. Look on our website. You have the things you can sign up for. So it just seems so far-fetched to think that in this sort of circumstance that we're all familiar with, which is where a company like Dish is providing—it says you can buy these one of X number of packages, that the person somehow ends up being the offeror. I understand that advertising those packages may not be an offer because you might have to have some back and forth. But at the end of the day, it seems like at the end of the day, you will be the offeree buying that package. Your Honor, I respectfully disagree because I don't think you're following the chain of actual conversation between the buyer and the seller. I want 12 months. No, we only do 24 months. I accept. The offer that he received was 24 months at $19.99 for this specific package. He calls up, and he says, I would like to have that package. And then what happens is two things. One is you have to be clear—he needs to be clear what that package was. He says, well, can I get it for 12 months? No, the package was 24 months. Then this next thing that happens is that the company is required to make sure he understands what he is committing to when he says, I want to buy that and enter into a contract with you. So the process is to simply say, do you understand that when you offer to buy our services, these things are part of the deal? They aren't different from the deal. It's not a back-and-forth. It's a—this is just what the terms are. At the end of the conversation, they say, do you understand now that when you say, I want to buy that package, that you are going to be agreeing to these things? The person says, yes. Dish then says, we agree. We agree to sell you the package and then acts on it. It starts by opening an account number. Then it schedules an installation where the person agrees to when that will happen. And as a part of that entire package, there is an explicit agreement. So you think the last chain and where the actual acceptance happens when they say, he says, we agree, and then Dish says, now we agree. Except for the only thing about that is, is that it would never happen that he would say, no, I don't agree to that. And Dish would be like, he'd be like, that's fine. We're going to, you know, we're fine with your disagreement. Let's go forward with the deal. Well, two things. One— The last step, I mean, you're adding this like formalistic step that like does nothing to it. I think you're missing a step, Your Honor. What he was asked was not, do you agree to buy our product? What he was asked is, do you understand the terms that will apply if you—and he said, yes, I understand. He didn't say, yes, I agree to buy your product. He says, yes, I understand what you're saying the terms are. And why doesn't the agreement happen right then? Because he didn't—because Dish has not yet agreed to sell to him. Well— That's the agreement. He wants to buy. Here are the terms. Do you understand the terms? You're saying that in theory, the Dish person could be like, okay, I've got, you know, I assume this is somebody on the phone and they've got their little checklist, you know, and they get to the end and it's all—the person's like, you know what? I don't want to sell to you anyway. Well, that's—actually, they do have to agree to sell. They do have to agree to set up an account. They do have to agree to schedule an installation so he has the equipment necessary to take the services. The company does have to agree. And actually, this happens over and over again. We don't have to focus just here. I think, broadly speaking, this rule is the rule. If you call a pizza parlor and say, I'd like to buy a pepperoni pizza, they say, well, the pepperoni pizzas are X, and it's going to take us 25 minutes to deliver. Do you understand that? The person says, yes. I still want to order a pizza. The pizza place says, I agree. I'm going to send you the pizza. That's the same thing. You call up and ask somebody, will you come, you know, paint my house? They send, you know, I want you to come paint my house. Your position is that the company, in a telephone sales transaction, it doesn't even really seem like you're basing it on who made the phone call. You're just saying that the company is always the offeree. The company is always the last one to decide. A couple of things. I mean, one, if the person initiated the telephone call and came to the telephone call with a specific offer. Why does them initiating matter at all? I mean, it seems to me under your, it could be them calling, it could be the company calling, and they still would have to go through the whole checklist. So I'm not sure why that, but let's just put that aside for a second. It doesn't, am I not right that like your position is that in this type of agreement, whether it's Netflix, whether it's Dish, whatever, it's always the company that actually is the offeree. That's your position? I believe two things. One is under the case of the Home Solicitation Sales Act, when they're trying to address the issues that are supposed to be the purpose of that act for whether there's sales pressure, et cetera. And given the legislative history where they said, we understand this hypothetical, which is when the person calls in, and even though they're at home, are we going to treat it as if it's a home solicitation sale? And they say, basically, that in order to give merchants instructions on how to deal, how to know whether the act is going to apply or not, we're going to say that if the buyer initiates the call, we're not going to treat that as a home solicitation sale. Now, that's for the purpose of this statute. You can argue whether that rule should apply universally or whatever, but for the purposes of the statute, because when the Legislative Council made that comment, they referred to travelers, and they said, travelers is going to dictate where the contract was entered into by virtue of where it was accepted. And where it was accepted, of course, is where the offeree acts. So in this case, and solely for the purpose of determining whether the Home Solicitation Sales Act was going to apply, the Legislative Council, which was then presumably relied upon by the House, said, we're going to treat, in that circumstance, the person initiating the call. What do you do with the fact that the actual hypothetical that you're referring to, you know, is a different type of, it's a different type of circumstance than this, what I would call a contract of adhesion, you know, the Netflix dish, etc., where they have certain programs, and you can sign up for one of those programs. And yes, you have to do all these things to make sure they check all the boxes. But in the example they give, the homemaker telephones a seller at their place of business, and he instructs the seller to deliver the goods or services at a stated price. So that does sound more, I mean, and then it says, I think it goes on to say that the oral contract is made. That does sound like a situation where, I don't know, you're buying some unique type good, and you say, you call them, you say, hey, I want to buy this. Please deliver it to me at this price. Obviously, that's not, is that not kind of different than the circumstance here where he did call, and he didn't say, I want this price, but he said, I did want 12 months, and DISH said, we don't do 12 months. Well, I mean, he had a, DISH offers us a selection of, a menu of things. He called, and he said, I want that one. I want you to deliver that one to my house. That is precisely the example of the legislation. He said he said he wanted, he wanted something, he didn't order off the menu. He tried to order, I mean, he tried to order off the menu, right? You can go ahead and respond. I did want to get your perspective before your time's out on the remand piece of this, too. Certainly, Your Honor. I believe that the Court's order on the remand order was perfectly correct and should be upheld, and I ask you to do so. The district court correctly determined that it had fully adjudicated Mr. Fuente's individual UCL and CLRA claims, and then found that there was, quote, simply no unadjudicated claim to be remanded, whether it's a case or a claim. Neither exists in this case. Is that, I mean, I recognize the district court said that. Is that actually correct in terms of what happened, that this was actually adjudicated when it's sort of undisputed that the plaintiff lacks standing as to this, I'll call it, remedy? Well, therein lies the problem, Your Honor. It is our position, Your Honor, that there is no such thing as a cause of action for an injunction, whether it's under the UCL, CLRA, or in any other case, breach of contract. The California courts are clear. There is no separate claim for an injunction. What you have, and that's upheld in the Vaughn v. Tesla case very precisely, in the context of the UCL, because there they were trying to divide the case between an individual's case and perhaps some kind of a representative case. And the court found specifically that doesn't happen, amongst other things, because that's against the rules for splitting, one, splitting claims. But more importantly, because there simply isn't a difference between some individual UCL claim and some representative claim. Given that, if it did get remanded, if this remedy was remanded, would DISH Network be subject to some sort of preclusion in the state court because it's already been decided in the federal court? I'm trying to figure out how this would work other than the specific, like some of the ramifications of a rule that you could remand it. Is that what would happen? Is you would be, since it's already been found by the federal court that the offer happened at his house and he's been awarded that, would it just be up to the state court to issue the public injunctive relief because the actual merits of the issue would already have been decided in the federal court? Your Honor, I believe that's going to be a topic that the state court would have to grapple with, the scope of that. But we would probably argue that the findings with respect to the federal court, that this was only Mr. Fuentes. They weren't commenting on any other telephone call or any other phone solicitation, just this. Is that even possible to base an injunction on? Are we bound by the finding that it was made at the home and therefore subject to that? Well, part of the reason I'm asking that is, I mean, it could in theory work the other way, right? Like, I think Judge Brass has her colleague on her side. In theory, could you peel it off at the beginning? If you did that and the state court raced and decided the public injunction claim before the federal court finished, if you can do that, so there's several questions, then would the federal court be bound by whatever the state court, you know, some sort of preclusion? Your Honor, I think I have to start at square one. CAFA's original jurisdiction, so the pendant and ancillary jurisdiction cases allowing sort of breaking up the cases, just don't apply here. Second, you know, you can't break a UCL claim up into the claim for damages and the claim for an injunctive relief. There's just one claim there. And when that one claim is adjudicated, if they had tried, and perfect, I thank you for asking, because if they had actually tried to do that at the beginning, either by alleging two separate causes of action, one for damages and one for a remedy, in their original complaint, in state court, such that when it got there, they say, well, you don't have jurisdiction over this claim, therefore remand it, that would have been a clear, obvious example of illegally splitting a claim. That's why the claim splitting rules apply here and not the claim preclusion rules, which are advanced by Mr. Fuentes, because that's the hypothetical they're basically asking you to assume. We had the right to present this as two different claims from the start, and we could have then asked for this case to be remanded as a separate claim. But that case would have been dismissed. There is no such thing as a claim for injunctive relief. It is either the UCL claim or it's no claim at all. And so you can't do that. You can't split these claims. Now, you know, the intriguing arguments that's been made with regard to the Lee footnote and the idea, is that how you say that, case ordering a remand, don't apply here, because whatever the ruminations are in those cases about the possibility of some case where there was confidential jurisdiction or other full original jurisdiction, it gets resolved. There's a claim left. Should under 1447C, should the court be allowed to remand that case? I don't know the answer to that. What I do know is this is not the case, because there is no residual claim here. The claim was adjudicated. A judgment has now been entered on his UCL and CLRA claims. The claims are over. What claim does he have? What primary right gives him the ability to ask for injunctive relief? It was the fact that under the UCL, his right has been violated. That has been resolved. There is nothing to remand here. And all that intrigue about what might happen one day if there were such a case simply doesn't apply here. Do you want to save your remaining time for rebuttal? Yes, thank you, Your Honor. Thank you, Mr. Patch. Thank you, Your Honor. To hopefully very briefly address the state law claim, Your Honor nailed it right in the head. This is an adhesion contract. Mr. Fuentes did not propose adhesion terms. Dish proposed what they even called offers. He accepted if any binding contract was formed over the phone, Dish was the offeror, Fuentes was the offeree. I'd like to correct one point I made in my opening argument in response to the question of what should happen if this issue was caught and standing jurisprudence had been static. Federal courts have an unflagging obligation to adjudicate the claims before them. The federal court should not remand until it's exhausted jurisdiction. So while it happened as such here, we follow the procedure that should be done. Well, let's just make sure I understand. You're saying what you believe should happen in a situation like this is that any remand should take place at the end? Yes. And where are you getting that from? I apologize. I mean, it seems sensible that if this remand were even possible, that it would not happen in the middle of the case. But I guess I'm wondering, what is your source? There is case law for the authority that the federal courts have an unflagging obligation to adjudicate claims. Right. But this is not a claim that is within the court's jurisdiction. So I don't see what the unflagging obligation has to do with the timing of the remand. Just in the sense that the claim before the court relinquished jurisdiction, it should exhaust the jurisdiction that it has. I mean, it seems like a prudential-type argument. I'm not sure what source of authority you're locating this in other than some reasoned common sense. On the fly, I don't have a case for that. Can I ask you the question I asked your colleague about? So what happens if a court was to say, yes, you remand this claim slash remedy, whatever it is? If we did that in state court, I assume your argument would be there's a form of preclusion that would raise judicata so that what the federal court has already decided about the fact that there's been a violation here should be carried over into this case or should control this case, and then all we're really I'm not sure what all the factors are that the California court would look at, but whatever was left over, they would decide, and then in theory, you would get an injunction. But is your view that much of the work would have already been done in the federal case that would control? We still have some work to do. We asked the trial court judge to make a finding that as seditious practices, the State trial court judge? I'm sorry, the district court judge, to make a finding as seditious practices in our motion for partial summary judgment. He declined to do so and limited his analysis to Mr. Flint's transaction. So it's not a situation where we got you. It's just an issue of what the remedy is. So you would need the state court to do more deciding of what district networks like general practices in order to get a public injunction that would enjoin that general practice? Yes, whether that's by further motion practice or simply by a patch trial. I'll tell you what's kind of concerning about your position on the remand is, just from my experience with civil litigation, is that we don't have traditionally this, if what you're asking for is correct, every federal case that's removed would have a basically a new proceeding at the end where the judge takes stock of all the claims that were dismissed for lack of jurisdiction, which there can often be many. No standing, it's moot, it's not ripe, whatever the case. And the judge then says, all right, now I got to go back in time to remember all these claims that used to be in the case. We're now going to have everybody come together and remind me, what are those cases, those claims I dismissed, now I'm sending those back to state court. That's just not a proceeding or a procedure I'm at all familiar with. Well, here, while 1447C does just sort of sue a spontaneous remand, we did affirmably ask for the remand. No, I know, but if what you're saying is right, this would be happening all over the place, and we would have all kinds of splinter litigation where things are going back to state court upon CAFA removal. It's very common when you have a CAFA removal for some of the claims not to be able to go forward in Federal court due to the strictures of Article III. It's just very odd to me that if this was something that is allowed, why it wouldn't be happening all over the place. So what we're asking is very narrow and specific to Article III standing. And I think that the problem is anything short of this would require the court to adjudicate in some form the claims which it doesn't have jurisdiction over. Well, you adjudicate them by dismissing them. Which I think to some extent is a merits determination. Well, it's not a merits determination. That's the whole point, is it's the same. We don't have jurisdiction to decide the claim. The claim is dismissed. And then in this instance, a remand would be preferable to dismissal because we very well, even with dismissal, may be able to go back and refile at state court only to be removed again. And that would create sort of the jurisdictional ping-pong that CAFA was designed to avoid. So here where we've specifically asked for remand on the basis of Article III jurisdiction, the only appropriate remedy is to remand what remains of the case at the time we asked for it. I think it's also important to keep in mind that, as I stressed, standing jurisprudence has changed substantially since we filed the case. With the Davidson v. Kimberley-Clark decision and then TransUnion, there is now a remedy-by-remedy standing requirement, which wasn't necessarily there before. So to Your Honor's earlier point of, well, could we have pled the case differently, I think when we pled it, when we pled it, we did believe we could get public injunctive relief in Federal court. That has not now changed, certainly by no fault of our own. And where we originally filed in State court, the appropriate procedure, now that there is no dispute, there's no Article III jurisdiction over what remained of the case the instant before judgment was entered, the appropriate procedure would be to remand here, just as was done in Magogia. Let me ask one in your view. So did I understand your argument correctly? You are acknowledging, I don't know that there's a disagreement, that you are effectively asking for a remedy to be remanded. I think sometimes you refer to it as a claim, but there is part of that, of a claim, that claim that was decided by the Federal court. So you're, you are, I understand your arguments about claim splitting and why they don't apply here, but you are asking for part of a claim to be remanded. We're asking what remains of the two of the claims to be remanded. And I think it's important to note that under the unfair competition law, that there is no claim. And then your argument is that that's okay under the statute because you're asking the entire case to be remanded because you want what's left of the entire case to be  Exactly, Your Honor. Okay. All right. Thank you, Mr. Cohn. Mr. Patch. Thank you, Your Honor. Thank you. On the Home Solicitation Sales Act, I just want to tie it off. I understand the court's views, but I would point out that, you know, this was a defect in the statute, in our opinion, and it didn't, everything in the statute contemplated a written contract. The notice had to be right next to the signature. There had to be a detachable notice of exercise of rescission. So the statute just didn't speak to it. The legislative council identified that, and they said, what happens when we have an oral contract over the phone, which is commonplace. It is the way businesses do business now. How are we going to tell them whether it applies or not? We're going to tell them it applies. It does not apply if the customer calls you. Wetherall specifically discussed this and said, we find in that case, we're not going to apply that rule, but we're not going to say what the right rule is. But this Court decided it. I ask you, DeNovo, to look at it again and find that the only thing that makes any sense in modern commercial transactions is to have a bright line distinction. You can't go into every phone call, decide, well, did they say no? Was it a counteroffer? Was it this? That those are not going to apply because they're not at the home, and nothing about the transaction implicates the purposes of the Act, which is to avoid the kind of pressure that happens in home sales. It doesn't apply to this telephone conversation. On the issue of remand, I would like to say a couple quick things. One, under Hodges, the pleading and plaintiff's case does not satisfy the request for a public injunctive relief, he says, for people similarly situated. He doesn't have, he didn't plead a public injunctive relief claim to survive. Second, he's self-excluded. At the beginning of the case, he said, I might sign up again for DISH if they change their practices, and then in the declaration in support of the remand motion, he self-selects out and says, I will never sign up for DISH again, therefore, I don't have standing to ask the federal court for this relief. Third, and most importantly, the plaintiffs and the plaintiffs' counsel are the masters of their own destiny with respect to these issues. It is a matter of pleading that they can elect, and they can guide their cases in any way they want. If they want to bring a state court claim for a class action and seek public injunctive relief, then they have to know that CAFA may apply, and they have to separately allege standing for public injunctive relief, which means they have to specifically say what Mr. Fuentes decided not to say, which is, I do want to do this, I am protecting the people as a whole because I'm one of them. He could easily do it. Secondly, if they don't, if they don't want to, then they can simply file in state court and don't take, don't ask for the class, or if they do, ask for it on a California-specific basis or some other reason that defeats CAFA jurisdiction, make their public injunctive claim, and away they go. But what they can't do is what the plaintiffs have done here. They can't do a very broad claim against DISH on a class, seeking class action relief for hundreds of millions of dollars or whatever, and then lose the class claim, then go ahead and adjudicate the UCL and CLRA claims, and then say, now that we lost broad relief in the Federal court, we want a second chance to do it in state court. I think we have your argument, Mr. Patch. I want to thank you for your presentation. Thank you, Mr. Cohen, for his presentation. This matter is submitted. The court will stand in recess until tomorrow morning.
judges: BRESS, VANDYKE, Lasnik